## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| TIMOTHY STEVENS, )<br>      Plaintiff, )<br> )<br>v. )<br> )<br>SERVICE SANITATION, INC., )<br>      Defendant. ) | CAUSE NO.: 4:22-CV-89-JVB-AZ |

### OPINION AND ORDER

This matter is before the Court on Defendant Service Sanitation, Inc.'s Motion for Summary Judgment [DE 28] filed on November 30, 2023. Plaintiff Timothy Stevens responded on January 11, 2024, and Service Sanitation replied on January 25, 2024.

### BACKGROUND

On June 30 2022, Timothy Stevens filed a complaint against Service Sanitation, Inc. in Tippecanoe Superior Court. Service Sanitation removed the case to federal court on November 4, 2022, on the basis of diversity jurisdiction. Stevens brings a claim against Service Sanitation for negligence.

Stevens alleges that on September 4, 2021, a rainy day, he entered a handicap-accessible portable bathroom on Purdue University's stadium grounds and slipped and fell on the slippery, uneven floor, resulting in two fractures in his upper left arm. He alleges that Service Sanitation was negligent in one or more of these ways:

1. Failing to place the port-a-pot on level ground to ensure a safe condition for the use of visitors;
2. Failing to keep the port-a-pot clear of water or other liquids so as to prevent a slippery surface on which visitors may fall;
3. Failing to inspect and discover the hazardous conditions existing in and around the port-a-pot;
4. Failing to maintain the premises of their port-a-pot with reasonable care; and

> 5. Failing to warn Stevens of the hazardous conditions existing in and around the port-a-pot when Service Sanitation knew or should have known of the same.

Stevens alleges that, as a direct and proximate cause of Service Sanitation's negligence, he suffered damages.

In the briefs on summary judgment, Stevens presents only two arguments for finding that Service Sanitation was negligent: (1) Service Sanitation's portable bathroom units should have had anti-slip flooring, and (2) Service Sanitation placed the unit Stevens used on unlevel ground and not on a hard surface.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying the evidence, if any, which it believes demonstrates the lack of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden shifts to the non-moving party to showing that an issue of material fact exists. *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided

2

in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

## MATERIAL FACTS

Service Sanitation is a company that specializes in providing portable restrooms and sanitation solutions. (Service Sanitation Dep. 15:22-16:21, ECF No. 28-4). Service Sanitation purchases its portable bathroom units from a manufacturer. *Id.* at 29:14-17. All of Service Sanitation's portable toilet units, including the flooring, are made of plastic material. *Id.* at 27:7-12, 29:3-4. Service Sanitation does not take any measures to make sure that the flooring is of a certain grade or quality or has certain grit in it to make sure that it does not become slippery after the units have been placed. *Id.* at 30:21-31:1. Instead, the manufacturer determines the flooring used in the units. *Id.* at 29:14-17.

Service Sanitation specifies that its portable toilet units be placed on level ground because it provides a safer entry and exit for patrons using the units. *Id.* at 38:1-12. Service Sanitation agrees its portable toilet units should not be placed on areas that are visibly wet and sometimes encourages its customers to agree to placement of the portable toilet units on a hard surface, like a parking lot, rather than grass. *Id.* at 38:13-16, 39:20-40:15. If a customer insists on

placement of a Service Sanitation unit in an unsafe location, Service Sanitation will refuse delivery. *Id.* at 36:18-37:13.

On or around June 23, 2021, Purdue University placed a Work Order with Service Sanitation for 101 "Event Basic Portable Restrooms," 28 "Event Handicap Portable Restrooms," 129 hand sanitizers, and 129 restroom locks to be delivered to the Purdue University Campus on September 1, 2021. (Service Sanitation Dep. Ex. 7, ECF No. 28-4). It is undisputed that these portable toilets were requested for use during its football tailgate events which began on September 4, 2021. The Work Order indicates that Service Sanitation was to lock all of the units after delivery. (Service Sanitation Dep. 63:20-25, ECF No. 28-4).

Purdue University provided Service Sanitation with instructions concerning the desired location for the portable toilets *Id.* at 56:19-57:2, 65:2-8. Prior to delivery, Purdue University provided Service Sanitation with a map of the university grounds which specified the areas where the portable restrooms were to be placed. *Id.* at 53:4-10; (Service Sanitation Dep. Ex. 10, ECF No. 28-4); (Service Sanitation Dep. Ex. 7, ECF No. 28-4).

There was a Purdue University contact on site that followed Service Sanitation personnel to each and every location when the portable bathroom units were delivered. (Service Sanitation Dep. 57:3-23, ECF No. 28-4). The Work Order instructs: "ALL LOCATIONS APPROXIMATE, USE BEST JUDGEMENT ON PLACEMENT." (Service Sanitation Dep. Ex. 7, ECF No. 28-4). The Work Order also provided directions on placement for some units. *Id.* These directions were created by Purdue. (Service Sanitation Dep. 56:5-15, ECF No. 28-4).

Service Sanitation locked the portable restrooms when it completed the delivery. *Id.* at 63:20-25. Purdue University was responsible for unlocking the restrooms before the football tailgate on September 4, 2021. *Id.* at 64:3-4. Purdue University did not request or hire Service

Sanitation to remain on site during the tailgate event for maintenance of the portable bathroom units after it completed its delivery. *Id.* at 70:14-22.

On September 4, 2021, after Stevens attended a "pre-tailgate party" at his neighbor's son's home, he drove to and parked at the Purdue University tailgate, specifically Lot CC located at Cherry Lane and McCormick Road. (Stevens Dep. 15:1-2, 19:3-9, 23:24-24:4, ECF No. 28-5). It is undisputed that it had been raining all morning, that the rain gradually turned into a mist that afternoon, and that, about five minutes after arriving at Lot CC, Stevens entered a handicapped portable restroom located in the grass directly next to Lot CC.

When Stevens opened the restroom door, he saw that the restroom was damp, entered the restroom, and locked the door. *Id.* at 16:1-4, 55:22. Then, without picking his feet up off the floor, he "scooted" to turn his body toward the toilet, and he slipped and fell inside the portable restroom. *Id.* at 17:4-6, 23-15, 19:1-3. Stevens was taken to the hospital by ambulance. *Id.* at 33:16-23.

Stevens testified that the portable restroom unit he used "was on a crown" with "a little bit" of a slant to the unit and there was "a little bit of a gap" between the unit and the ground; that is, the unit was "not flat on the ground." (Stevens Dep. 39:6-18, ECF No. 28-5).[1]

**ANALYSIS**

In order to succeed on a negligence claim, a plaintiff must prove by a preponderance of the evidence: "(1) duty owed to [the] plaintiff by [the] defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately

---

[1] Stevens also submits that Service Sanitation agreed at its Federal Rule of Civil Procedure 30(b)(6) deposition that it owes a responsibility to its customers and users to provide handicap-accessible units that are safe and accessible to use. *See* (Sanitation Services Dep. 47:12-18, ECF No. 28-4). Even so, Sanitation Service's objection, made at the deposition and renewed in the briefing, that this calls for a legal conclusion from a lay witness (and is therefore an inappropriate question to ask in a deposition of a fact witness) is sustained. *See Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1251 (7th Cir. 2022) ("A party cannot smuggle in legal conclusions masqueraded as factual contentions through a deposition.").

caused by [the] defendant's breach of duty." *Safeco Inc. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 906 (Ind. 2024) (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). Service Sanitation argues for summary judgment in its favor because it did not owe a duty of care to Stevens, it did not breached a duty by merely following Purdue's direction, it did not owe a duty of care to Stevens through a bailment relationship, and the conditions were known and obvious.

### A. Duty of Care

Whether a duty exists is a question of law for the Court to decide. *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004). Service Sanitation argues that Stevens cannot meet the general duty test laid out in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991). In considering when a duty should be imposed in *Webb*, the court "conclude[d] that three factors must be balanced, viz. (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* at 995.

Stevens counters that the *Webb* test applies only if the appropriate duty of care "has not already been declared or otherwise articulated." *Goodwin*, 62 N.E.2d at 387 (quoting *NIPSCO v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003)). Stevens is correct and has identified that Indiana's Supreme Court has articulated the appropriate duty of care. The duty of care set forth in *Peters v. Forester*, 804 N.E.2d 736 (Ind. 2004) applies: Service Sanitation owed Stevens "a duty to use reasonable care both in its work and in the course of performance of the work" under its contract with Purdue University. *Id.* at 743. The duty, as laid out in *Peters*, is:

> a builder or contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner, where it was reasonably foreseeable that a third party would be injured by such work due to the contractor's negligence.

6

*Id.* at 742.[2]

The work Service Sanitation performed was the placement of the portable bathroom units on Purdue's campus. The undisputed evidence is that the choice of flooring used in the units was made by the manufacturer and not Service Sanitation. The lack of anti-slip flooring is not a part of the work Service Sanitation performed, so Service Sanitation had no contractor's duty toward third parties such as Stevens regarding the flooring. As a matter of law, Service Sanitation cannot be found liable to Stevens for negligence regarding the flooring installed in the unit.

The lack of anti-slip flooring, however, is not Stevens' only argument of negligence by Service Sanitation. Stevens also argues that Service Sanitation was negligent in the placement of the unit on an unlevel and grassy surface. Stevens testified that when he walked into the portable toilet that it was not on level ground—specifically that the unit was placed on "a crown on the ground" and was "tipped back" with the front of the unit "a little bit" off the ground. (Stevens Dep. 35: 25-36:8, ECF No. 28-5). Stevens also offers the report of his expert, Lee Martin, who found that "[p]lacement of the portable accessible restroom unit in the grass adjacent to the parking lot allowed it to be unlevel, and increased the likelihood that it would become contaminated with water, mud and/or grass." (Martin Rep. at 8, ECF No. 35-1). The placement of the units was part of the work performed by Service Sanitation as a part of its contract with Purdue. As to the placement of the units, Service Sanitation owed a duty of reasonable care.

As applies to the *Peters* standard, Service Sanitation contends that injury was not reasonably foreseeable. When determining foreseeability in the duty context, the analysis is broad and general, "without regard to the facts of the actual occurrence." *Guy's Concrete, Inc. v.*

---

[2] As Service Sanitation identifies, the work performed in *Peters* also violated the applicable building code. Service Sanitation would have the Court find that failure to comply with a code, statute, industry standard, or other analogous guide point is necessary to show that the *Peters* duty has not been met. As the *Peters* standard does not explicitly state this, the Court will not find that it is an implicit requirement.

*Crawford*, 793 N.E.2d 288, 296 (Ind. Ct. App. 2003). Service Sanitation asserts that it was not reasonably foreseeable that Purdue "would fail to maintain the portable restrooms or any potential hazards upon a premises over which Purdue had exclusive possession or control." (Mem. Support at 7, ECF No. 28-2).

Service Sanitation's finger-pointing at Purdue, however, is not a part of the foreseeability question in the duty context. The question of intervening causes is relevant to the proximate cause element of negligence, not the duty element. Here, the Court finds that the proper inquiry is whether it was reasonably foreseeable that a tailgater using a portable restroom unit placed on uneven, unpaved ground would fall and be injured.

The Court further finds that the answer to this inquiry is that it was reasonably foreseeable. It was expected that Purdue would have many tailgaters before the football game, and Purdue contracted with Service Sanitation to have portable restrooms available for the tailgaters to use. Placement of the units on unpaved ground increased the likelihood of elements of the outside (such as mud and debris) being tracked into the unit when tailgaters enter it to use the unit. Placement on uneven ground increases the likelihood that a tailgater may slip and fall when inside the unit. As a matter of law, Service Sanitation owed a duty to Stevens.

**B. Breach**

Service Sanitation contends that it cannot be held liable for any duty the Court might find it owed Stevens because it was only following Purdue's directions in placing the toilets. The *Peters* court clarified that "there is no breach of duty and consequently no negligence where a contractor merely follows the plans or specifications given him by the owner so long as they are not so obviously dangerous or defective that no reasonable contractor would follow them." *Peters*, 804 N.E.2d at 742. Though Service Sanitation asserts that Purdue personnel directed the

placement of each bathroom unit, the work order instructs Service Sanitation personnel to "USE BEST JUDGEMENT ON PLACEMENT," explaining "ALL LOCATIONS APPROXIMATE." There is a genuine issue of material fact whether Service Sanitation was using its independent judgment or "merely followed" Purdue's directions for placement of the units. Summary judgment is inappropriate on this argument.

### C. Bailment

Service Sanitation argues that because of the bailment of its portable restrooms to Purdue it cannot be held liable for injuries caused by the bailed property. Service Sanitation cites *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075 (Ind. Ct. App. 2005), in support. Stevens says *Cox* is inapt because the portable restrooms were delivered in an unsafe condition, unlike in *Cox*, where there was no such claim that the injury-causing trailer was defective or dangerous when delivered to the lessee. *See id.* at 1078. The Court agrees with Stevens. In *Cox*, the injury under consideration was caused by a defective condition that arose after the delivery of the property at issue. Here, the defective condition (the alleged placement on unlevel ground) was present while the bathroom unit was still under Service Sanitation's control.

### D. Known and Obvious Conditions

Lastly, Service Sanitation argues that Stevens is comparatively at fault for his injuries because the condition of the floor was known and obvious, as was the risk posed by it.

Service Sanitation cites the Restatement (Second) of Torts provision regarding when *a possessor of land* is subject to liability for physical harm to their invitees. In an unpublished decision, the Indiana Court of Appeals found that this provision does not apply to non-possessors of land. *Green Gang, Inc. v. Phillips*, 205 N.E.3d 223, 2023 WL 380920, at *3 (Ind. Ct. App. 2023) (unpublished table decision). Purdue was the possessor of land, not Service Sanitation.

9

Further, Service Sanitation's argument on this point is based on Stevens's testimony that he observed the moisture on the floor of the unit before entering. There is no argument of Stevens being aware of the unit's placement on unlevel ground before entering. Without an argument that placement on unlevel ground was known and obvious condition, this argument is off point and provides no basis for summary judgment in Service Sanitation's favor.

## CONCLUSION

For these reasons, the Court hereby **DENIES** Defendant Service Sanitation, Inc.'s Motion for Summary Judgment [DE 28].

The Court **REFERS** this case to Magistrate Judge Andrew P. Rodovich to hold a settlement conference. Unless directed otherwise by Judge Rodovich, counsel shall contact Judge Rodovich's chambers after seven days to arrange a time for the settlement conference.

SO ORDERED on August 12, 2024.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT